**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 5, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2018AP848-CR**

Cir. Ct. No.  2015CF176

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JILL M. JAZDZEWSKI,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Jefferson County:  DAVID WAMBACH and LEE S. DREYFUS, JR., Judges. *Affirmed*.

Before Fitzpatrick, P.J., Graham and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Jill Jazdzewski appeals a judgment of conviction and an order denying her motion for postconviction relief.[1]  The issue is whether the sentencing judge was objectively biased due to his own past experience in a fatal accident.  We affirm.

¶2    Jazdzewski pled no contest to one count of homicide by intoxicated use of a vehicle.  The complaint alleged that she was the driver of a vehicle that crossed the center line and struck an oncoming vehicle, and that Jazdzewski's blood contained a detectable amount of a restricted controlled substance.

¶3    The court imposed the maximum initial confinement period of fifteen years, with four years of extended supervision.  In Jazdzewski's postconviction motion she argued that the judge was objectively and subjectively biased.  However, she withdrew the subjective bias claim before the hearing.  The objective bias claim was based on a combination of factual allegations relating to the judge's own involvement in a fatal accident, the judge's emotional reactions during sentencing of Jazdzewski, and the judge's discussion of "survivor's guilt."

¶4    The circuit court, by a different judge, held an evidentiary hearing at which Jazdzewski's trial counsel and the sentencing judge testified.  The circuit court denied the motion.

¶5    In deciding whether the judge was objectively biased, the question is whether there was an appearance of bias that reveals a great risk of actual bias.

---

[1] The Honorable David Wambach entered the judgment of conviction following a no contest plea.  The Honorable Lee S. Dreyfus, Jr., entered the order denying the defendant's postconviction motion.

*See State v. Hermann*, 2015 WI 84, ¶46, 364 Wis. 2d 336, 867 N.W.2d 772. This is a question of law that we review independently. *Id.*, ¶23.

¶6      Jazdzewski argues that there are four bases to conclude that the sentencing judge showed an appearance of bias. She argues that these bases gave the appearance that the judge was not able to weigh the retribution factor in sentencing in a neutral and detached way because he identified excessively with the victim's family.

¶7      The first basis is that the sentencing judge, like the family members of the victim in this case, suffered a personal loss in a motor vehicle accident. During the postconviction motion hearing, the sentencing judge testified that he has been involved in an accident as the operator of a motorcycle, and that his "life partner," riding as a passenger, died as a result of injuries sustained in the accident.

¶8      Jazdzewski argues that the judge's own loss would lead him to identify with the family of the victim in this case and to place more emphasis on their desire for retribution than would a neutral judge who did not have a similar experience. She argues that this identification was shown at sentencing by the judge giving the family advice, based on his own experience, about using a grief counselor.

¶9      We do not agree that giving advice of this sort to a victim's family shows excessive identification with the family. This comment did not give the appearance of bias.

¶10     Jazdzewki argues that the second basis showing an appearance of bias is that the sentencing judge appeared to have been affected by survivor's

guilt. This argument is based on the judge's own accident experience and his reference to one of the victim's sisters describing feelings of survivor's guilt. The argument is further based on an academic article. Citing the article, Jazdzewski asserts that "feelings of guilt by survivors of traumatic events, and how those feelings manifest in the survivor's actions, are a well-studied psychological phenomenon."

¶11 Jazdzewski does not rely on any testimony by the sentencing judge about whether he experiences survivor's guilt. Nor does she rely on findings by the postconviction court on this subject. The sentencing court's reference to survivor's guilt was clearly in the context of describing the effect the crime had on a specific member of the victim's family who had expressed such a feeling. This is an appropriate consideration. The judge did not refer to his own loss at that point. Jazdzewski asserts that the judge "alluded to his own feelings of guilt" with this reference to survivor's guilt, but we do not see any basis to interpret his comment in that way.

¶12 In sum, there is no evidentiary basis to conclude that the sentencing judge experiences survivor's guilt or that it affected Jazdzewski's sentence. And, while the academic article may provide support for the idea that a person with the experience of the sentencing judge *could* experience survivor's guilt, the article is not a substitute for actual evidence, either at sentencing or at the postconviction hearing, that the judge *does* experience survivor's guilt.

¶13 The third indicator of bias that Jazdzewski relies on is that the sentencing judge was emotional during sentencing. Jazdzewski's trial counsel testified that there were two specific points during the hearing when the judge was "weeping." The sentencing judge testified that he recalled being "emotional"

4

during the hearing, but did not recall crying or having to pause to compose himself. He recalled "a point or two in which I was what most commonly would be referred to as choked up where you catch a lump in your throat."

¶14 The postconviction court, in making its decision, acknowledged the differing testimony that the sentencing judge "may or may not have been crying depending upon the – whom you listened to." The court did not expressly make a finding on that point, but stated, "whether he was weeping, whether he was choked up, there's very little question when you review the transcript that he was in fact emotional." The court then reviewed the two portions of the transcript aloud and concluded: "Now, I would note that he did not end up having to recess the proceedings. It seems that it did take him a few moments to – certainly, the first time, to compose himself, and the proceeding continued…. Certainly there isn't any question but that he showed emotion."

¶15 Jazdzewski argues that, regardless of the precise extent of the sentencing judge's emotional response, that response gave the appearance that he was identifying with the victim's family and was unable to impartially weigh the sentencing factors. We do not agree. As the postconviction court stated, judges "are not and should not be automatons." Homicides are among the most emotionally charged types of cases. When considering the loss felt by a victim's family, and their need to heal from that loss, it is natural that a judge may have an emotional response. We do not regard the fact that these emotions were visible in the courtroom as creating an appearance of bias.

¶16 The fourth and final indicator of bias that Jazdzewski relies on is the fact that the judge sentenced her to the maximum term of fifteen years of initial confinement, well above the State's argument for six years. She points out that the

judge, in his sentencing remarks, described the victim's family as having "embraced" the "concept of retribution." She argues that this again shows excessive identification with the victim's family.

¶17    We do not agree that exceeding the State's recommendation and imposing the maximum sentence are bases for inferring the appearance of bias. Jazdzewski does not offer any case law in which these features of a sentence have been held to show, either alone or with other facts, an appearance of bias.

¶18    Beyond these potential indicators of bias, Jazdzewski does not argue that the sentencing court erroneously exercised its discretion by failing to consider required factors or considering improper factors.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2017-18).